| | |
|---|---|
| Cameron Bell, | Case No.: 2:17-cv-002709-JAD-BNW |
| Plaintiff | |
| v. | **Order Granting Defendants' Motion for Summary Judgment, Denying Plaintiff's Motions for Summary Judgment and for Additional Discovery, and Closing this Case** |
| Core Civic, et al., | |
| Defendants | [ECF Nos. 53, 59, 67] |

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Pro se prisoner Cameron Bell sues Core Civic, Officer McMurtrey, and Warden Janice Killian for various torts arising from an incident where McMurtrey allegedly caused a door to close on Bell's neck.[1] Bell moves for additional discovery,[2] but I deny his request based on his lack of diligence and noncompliance with procedural requirements. The parties also cross-move for summary judgment on all of Bell's claims.[3] Because Bell has not produced any evidence to show that McMurtrey intentionally caused his injuries, I grant summary judgment to the defendants and close this case.

## Background

Bell alleges that on August 9, 2017, Nevada Southern Detention Center (NDSC) Corrections Officer McMurtrey let the door to the multi-purpose room door close on Bell while he was passing through.[4] Shortly after, Bell informed McMurtrey that he had "a major

---

[1] ECF No. 16 (first amended complaint).
[2] ECF No. 59 (motion for additional discovery).
[3] ECF Nos. 53 (defendants' motion), 67 (plaintiff's motion).
[4] ECF No. 16 at 4.

headache" and "need[ed] to see medical," but McMurtrey walked away.[5] Bell alleges that he requested to speak to the superior officer of the shift, Sergeant Holland, and McMurtrey reluctantly obliged.[6] Holland escorted Bell to the medical unit and left him there to go inform Captain Rice and Lieutenant Perrin of the incident.[7] After reviewing the video footage for the incident, Rice and Perrin told Bell that "it didn't look intentional."[8] McMurtrey states that he did not intend to hit Bell with the door and that it didn't hit him in his neck or jaw, as Bell claimed.[9]

On the day of the alleged injury, Bell went to the medical unit and "was referred to a provider for a routine health appraisal" for the next day.[10] The intake form from that night shows that he had swelling on the left side of his neck.[11] The next day, a nurse evaluated Bell and noted that he didn't have any bruises or open areas, but that he did have swelling in his neck.[12] She instructed him to apply ice and prescribed Ibuprofen for four days.[13]

When Bell returned to see Dr. Craig on August 14, he was diagnosed with an infection of the submandibular gland called sialadenitis.[14] Dr. Craig informed Bell that his pain and swelling was consistent with an infection and required antibiotics.[15] Dr. Craig's notes provide that that "[t]he mechanism of injury proposed by this inmate does not fit the clinical picture," there was

---

[5] *Id*. at 5.
[6] *Id*.
[7] *Id*. at 6.
[8] *Id*. at 7.
[9] ECF No. 54-1 at 6.
[10] *Id*. at 10, 18.
[11] *Id*. at 18.
[12] *Id*. at 15, 17.
[13] *Id*. at 15.
[14] *Id*. at 14.
[15] *Id*.

"no contusion on the soft area of the neck to support his contention that this gland was the site of blunt trauma."[16] Importantly, Bell was diagnosed at NSDC in March 2015 (two years before this incident) with a cystic mass in his left jaw that was "movable, [had] no pain, [was] non-tender, [and] slow growing for about 3 yrs."[17] Dr. Craig explained to Bell that this infection could spread and require surgery, hospitalization, or lead to death, but Bell refused the antibiotics.[18] Despite his refusal, Dr. Craig dispensed penicillin and Ibuprofen to Bell for self-administered use. Bell was transferred out of NSDC on August 18, 2017, with the medication.[19]

## Discussion

I previously screened Bell's complaint and found that he stated plausible causes of action for negligence, negligent infliction of emotional distress (NIED), and battery against McMurtrey, Core Civic, and the warden under a respondeat-superior theory of liability.[20] The parties cross-move for summary judgment on all claims, and I address their arguments below. But because there is no evidence that Bell served the warden, I dismiss Bell's claims against her from this suit before addressing the dispositive motions.[21]

**I.  Bell's motion for additional discovery [ECF No. 59]**

Bell seeks additional discovery in the form of pictures that Holland allegedly took of Bell's injuries the night he was injured, video showing that Holland took the pictures, incident reports, a copy of Core Civic's insurance policy, his mental-health records, and the medical

---

[16] *Id.*
[17] *Id.* at 10, 19.
[18] *Id.* at 11, 14.
[19] *Id.* at 11, 16.
[20] ECF No. 15 (screening order).
[21] *Id.*; ECF No. 25 (returned, unexecuted summons).

3

records for the surgery he received on his neck.[22] He vaguely asserts that this discovery is material to his case—omitting any discussion on what each item may show—and argues that this court should relax the procedural requirements for him because he is representing himself.[23] The defendants argue that Bell's request for additional discovery is vague and untimely, noting that discovery closed two months before his submitted this motion.[24] The defendants add that Bell's inability to present certain evidence in opposition of their summary-judgment motion is the result of his own failure to meet and confer with the defendants regarding their responses to his requests.[25] Magistrate Judge Weksler already considered Bell's prior request for a 30-day extension to file discovery motions, for all but the surgical records, and she denied his request because he filed it 18 days after the close of discovery and the parties had already submitted their motions for summary judgment.[26]

Another extension is unwarranted. The federal and local rules require parties to move for an extension of a deadline no later than 21 days *before* the deadline and with supporting good cause.[27] Pro se litigants are not excused from these procedural requirements just because they lack an attorney.[28]

---

[22] ECF No. 59.

[23] *Id. See Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980) ("We decline to allow a prisoner simply because of his incarceration to hold quite possibly groundless litigation over the heads of prison administrators indefinitely.").

[24] ECF No. 60.

[25] *Id*. at 3.

[26] *See id*. at 5–6. Bell's surgery occurred on June 19, 2019, after the close of discovery on April 17, 2019, so he could not have included these surgical records in his request for an extension. Nonetheless, I deny his request for this discovery for the reasons discussed above.

[27] Fed. R. Civ. P. 16(b)(b)(4); LR 26-4.

[28] *See also Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107–08 (9th Cir. 2000) (pro se litigants are not excused from following court rules).

4

Bell's motion also appears to be a request to delay or deny summary judgment to allow further discovery under Rule 56(d). Rule 56(d) provides "a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence."[29] To prevail on a Rule 56(d) request, the movant must show: "(1) that [she has] set forth in affidavit form the specific facts that [she] [hopes] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion."[30] A Rule 56(d) motion "may be denied where the movant has been dilatory, or where the movant seeks irrelevant, speculative, or cumulative information."[31]

Bell hasn't established his right to this additional discovery under either Rule 56(d) or the discovery rules. He fails to explain what facts the discovery will produce and how they relate to the issues in this case. And his lack of diligence in pursuing this discovery weighs against granting the motion and further delaying my ruling on the cross-motions for summary judgment. Because the parties have submitted cross-motions for summary judgment and I find that re-opening discovery at this point would cause undue delay, I deny Bell's motion for additional discovery.

---

[29] *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).

[30] *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

[31] *Slama v. City of Madera,* 2012 WL 1067198, *2 (E.D. Cal. March 28, 2012) (internal citations omitted); *see California Union Ins. Co. v. Am.*, 914 F.2d 1271, 1278 (9th Cir. 1990) (stating that, under former Rule 56(f), a district court may deny a request for further discovery if the movant has failed to pursue discovery in the past, or if the movant fails to show how the information sought would preclude summary judgment).

## II.     Cross-motions for summary judgment [ECF Nos. 53 and 67]

### A.     Legal standard

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[32] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[33] If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[34] "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[35] "To establish entitlement to judgment as a matter of law, a moving defendant must show that one of the elements of the plaintiff's prima facie case . . . is clearly lacking as a matter of law."[36]

### B.     Negligence

"To recover in a negligence action, a plaintiff must demonstrate (1) that the defendant owed the plaintiff a duty of care, (2) that the defendant breached that duty, (3) that breach of the

---

[32] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[33] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[34] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[35] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

[36] *Delosh v. Nev. Div. of Prisoners*, 2016 WL 8732517, at *6 (D. Nev. Jan. 22, 2016) (internal quotation omitted).

duty caused harm to the plaintiff that was reasonably foreseeable, and (4) damages."[37] "Negligence is never presumed but must be established by substantial evidence."[38]

Even if Bell could establish McMurtrey negligently hit him with the door, he fails to show that there is a genuine fact that this impact caused his injury. Bell relies on the medical evaluation forms from the day of the incident and the day after, which show that he had a swollen neck, and his declaration that surveillance video and photographs will substantiate his injuries.[39] But Dr. Craig's report that Bell's inflamed glands were caused by an infection, coupled with Bell's refusal to take antibiotics and his medical records showing that he had a mass on the left side of his neck for at least two years before the incident eliminate any genuine issue that his neck condition was the result of a door injury.[40]

The defendants also offer a video—not of the incident—that appears to show that the jail's door closes slowly, and they argue that, because the door closes slowly, Bell had time to step out of the way.[41] Thus, they contend, even if McMurtrey had breached his duty, Bell can't show that the impact caused his injury, that he didn't assume the risk by remaining in the

---

[37] *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1065 (Nev. 2007).

[38] *D & D Tire v. Ouellette*, 352 P.3d 32, 38 (Nev. 2015) (quoting *Gunlock v. New Frontier Hotel Corp.*, 370 P.2d 682, 684 (Nev. 1962), *abrogated on other grounds by Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 156 (Nev. 2012)).

[39] ECF No. 60-1 at 17, 18. Bell also offers as evidence the diagnosis and medical report from Dr. Robert Tsou, who saw him after he was transferred to the prison in Adelanto or Victorville (it's unclear which), which states that Bell's neck injury was consistent with his claim that he was struck by the door. ECF No. 67 at 25. But Bell did not provide this evidence to the defendants, so I do not consider it. *See* FRCP 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

[40] ECF No. 54-1 at 14, 19.

[41] *See* ECF No. 55 (manual filing of video showing the multi-purpose room closing slowly).

7

doorway as it slowly closed, or that Bell attempted to mitigate the risk of harm.[42] Because no reasonable jury could find that McMurtrey caused Bell's neck condition, I grant summary judgment to McMurtrey on Bell's negligence claim.

### C. NIED

"A claim of negligent infliction of emotional distress requires the plaintiff to show that the defendant acted negligently (i.e. breached a duty owed to plaintiff) and either a physical impact . . . or, in the absence of physical impact, proof of serious emotional distress causing physical injury or illness." [43] A party can't establish NIED without first establishing the underlying negligence element.[44] As explained above, Bell can't satisfy the elements of causation or damages for his negligence claim. And, even if Bell had established his negligence claim, he provides no evidence to support his claim of emotional distress and resulting damages. At most, the record shows that he filed a subpoena for his psychological records to show that he has post-traumatic stress disorder.[45] But Bell has not supplied those records. Because Bell's NIED claim fails as a matter of law, I grant summary judgment on this claim to the defendants.

### D. Battery

"To establish a battery claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive contact, and (2) such contact did occur."[46] "This includes even the slightest

---

[42] ECF Nos. 53, 74.

[43] *Switzer v. Rivera*, 174 F. Supp. 2d 1097, 1109 (D. Nev. 2001) (citation and quotations omitted).

[44] *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172, 1178 (Nev. 2008) (affirming grant of summary judgment to the defendant on an NIED claim when the plaintiff failed to establish that the defendant was liable for negligence).

[45] ECF No. 67 at 23, 32.

[46] *Switzer*, 174 F. Supp. 2d at 1109 (citing Restatement (Second) of Torts, §§ 13, 18. (1965)).

intentional and unwanted exertion of force upon another individual."[47] "Additionally, the plaintiff must establish that the contact actually occurred."[48] Bell argues that McMurtrey intentionally and maliciously let the door close on him and delayed medical treatment to watch him suffer, and that McMurtrey's conduct was in retribution for an earlier "altercation regarding a chess board and chess pieces."[49] He seeks punitive damages against McMurtrey for his alleged malicious conduct.[50] But he fails to submit any evidence to show McMurtrey intentionally caused the door to hit him or to show that the chess incident occurred, citing merely to the allegations in his complaint. Allegations in a complaint are not evidence, however, and, "conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary judgment."[51] Additionally, there is no evidence that McMurtrey intended to let the door close on Bell—McMurtrey testified it was unintentional and Bell alleges that that the officers who reviewed the video stated that it didn't look intentional.[52] Because Bell can't establish the intent element for his battery claim against McMurtrey, I grant summary judgment to the defendants.

### E. Core Civic's liability

Bell argues that Core Civic is liable under respondeat superior because McMurtrey injured Bell in the course of his official duties.[53] "[R]espondeat superior liability

---

[47] *Jaross v. Phillips*, 2011 WL 3471865, at *4 (D. Nev. Aug. 9, 2011) (citing *Hobbs v. State*, 251 P.3d 177, 180 (Nev. 2011)).

[48] *Id*. (citing *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269 (D. Nev. Nov. 30, 2001)).

[49] ECF No. 67 at 6.

[50] *Id*. at 7.

[51] *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1116 (9th Cir. 2003).

[52] *See* ECF No. 16; ECF No. 54-1 at 5–6; *see also McDonald v. Sheriff of Carson City*, 512 P.2d 774, 775 n.1 (Nev. 1973) (explaining that there can be no battery where the alleged injury-causing conduct was accidental).

[53] ECF No. 67.

attaches . . . when the employee is under the control of the employer and when the act is within the scope of employment."[54] It is undisputed that Core Civic employs McMurtrey and that McMurtrey was acting within the scope of his employment when Bell claims he sustained an injury to his neck. But Bell hasn't established that McMurtrey is liable under any of his three tort claims, so Core Civic cannot be liable under a respondeat superior theory. Accordingly, I grant summary judgment to Core Civic.

### F. Compensatory and punitive damages

Bell seeks compensatory and punitive damages against the defendants.[55] But Bell has not established that he is entitled to damages in this case because all of his claims fail. So I deny his request for damages.

**Conclusion**

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment **[ECF No. 67]** is **DENIED**.

IT IS FURTHER ORDERED that the plaintiff's motion for additional discovery **[ECF No. 59]** is **DENIED.**

IT IS FURTHER ORDERED that the defendants' motion for summary judgment **[ECF No. 53]** is **GRANTED**. The Clerk of Court is directed to ENTER JUDGMENT in favor of the defendants and CLOSE THIS CASE.

DATED March 10, 2020.

_____
United States District Judge Jennifer A. Dorsey

---

[54] *Molino v. Asher*, 618 P.2d 878, 879 (Nev. 1980).

[55] ECF No. 16.